**CLARK ADVERTISING AGENCY, INC., Plaintiff-Appellee,**

v.

**James TICE, Defendant,**

**American Hot Rod Association, Defendant-Appellant.**

**No. 73-1244.**

United States Court of Appeals, Fifth Circuit.

March 8, 1974.

Hugh Russell, Robert R. Sanders, Amarillo, Tex., Bernard L. Balkin, Kansas City, Mo., for defendant-appellant.

Jerry F. Lyons, Amarillo, Tex., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge.

In this diversity action, Clark Advertising Agency sued the American Hot Rod Association (A.H.R.A.) and its president, James Tice, for payment under a contract for advertising and promotional services. Defendant Tice's motion for a directed verdict was granted, but the jury returned a verdict against A.H.R.A. for both contractual services and attorney's fees. A.H.R.A. attacks the admission of evidence as to contract terms negotiated between Clark and A.H.R.A. officers other than Tice, the form of the jury instructions, the denial of its request to make an opening argument, and the award of attorney's fees. We affirm the district court on all four issues.

Under a previous written contract, Clark supplied advertising services for the Winter Nationals Race in Phoenix, Arizona, in February, 1971. The total cost under that contract was $12,729.76. During negotiations for the oral contract that forms the basis of this suit, which provided for services in connection with a race to be held in West Palm Beach, Florida, it was initially agreed that the cost would be approximately the same. Tice had refused to sign a writ-

ten contract submitted by Clark because its terms deviated from those of the prior contract, for example by providing for a $50 per day promotional fee. When Clark presented a total bill of $18,102.10 under the present contract, A.H.R.A. refused payment, and this suit ensued.

There is no dispute that the initial talks held between Tice and Clark, had established in a general way that the expenditures under the oral contract would approximate those under the prior written contract. All discussions as to any increase in fees and costs were held between Clark and either Jerry Ballah, the Vice President of A.H.R.A. and the man primarily in charge of arrangements for the West Palm Beach race, or Bob Harkins, the Comptroller of A.H.R.A. A.H.R.A. contends that evidence of additional contract terms negotiated between Clark and either Ballah or Harkins should have been excluded, since they had no authority to contract for the organization.

■■ Whether or not either of these officers actually had express or implied authority to bind A.H.R.A., we hold that there is ample evidence to find that they had apparent authority to do so and also that A.H.R.A. is estopped to deny their authority. Apparent authority exists whenever a principal manifests to a third person that an officer or agent may act in its behalf, and the third person in good faith believes that the authority exists. When that third person reasonably relies upon that apparent authority to his detriment, the principal is estopped to deny the authority. Restatement (Second) of Agency § 8 (1958); H. Henn, Law of Corporations, § 226 (2d ed. 1970). Tice testified that he did not know all the terms of the "loose verbal agreement," since he ceased to be personally involved and left the negotiations to Ballah and Harkins. Similarly, after the race Tice left it to Harkins to negotiate with Mr. Clark for a settlement of his services in Florida. By leaving the detailed negotiation work to Ballah and Harkins, Tice created the appearance that they had authority to conduct those negotiations, on which authority Clark relied in carrying out his part of the contract. A.H.R.A. cannot now be heard to say that it is not bound by the contract terms worked out between Clark, Ballah and Harkins. Evidence of those terms was properly admitted.

■■ A.H.R.A. next contends that it was error to instruct the jury that Clark should recover for "reasonable and necessary" charges, since this language is usually used in reference to recovery on an implied contract, whereas the plaintiff's theory here was that of an express contract. Thus, A.H.R.A. contends that the only proper award could be for sums authorized by the express terms of the contract. However, A.H.R.A. failed to make a timely objection under Fed.R. Civ.P. 51. By the express terms of that Rule, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . . ." This prohibition is not hard and fast, however. We will recognize error "so fundamental as to result in a miscarriage of justice" in the absence of a timely objection, but that power is only exercised in the most exceptional cases. Delancey v. Motichek Towing Service, Inc., 5 Cir. 1970, 427 F.2d 897. Since there are no exceptional circumstances here, we hold that A. H.R.A. has waived any errors in the form of the jury instructions.

■ A.H.R.A. next contends that the district court's refusal to allow an opening argument to the jury constitutes reversible error, citing Aladdin Oil Burner Corp. v. Morton, 1936, 117 N.J. L. 260, 187 A. 350; Conner v. Flaska, 1927, 32 N.M. 162, 252 P. 1001, and Stolpher v. Bowen Motor Coaches, Tex. Civ.App.1945, 190 S.W.2d 376. These cases do not support the contention, since they deal with the denial of the right to make an argument to the jury after the presentation of evidence has been closed, not with the refusal to allow an opening argument. More fundamen-

tally, we feel this is strictly a matter of the conduct of the trial, best left to the discretion of the district court, and governed by federal rather than state rules. The only federal authority in point, United States v. 5 Cases, Etc., 2 Cir. 1950, 179 F.2d 519, accords with our view that the grant or denial of the privilege rests within the sound discretion of the district court. We find no abuse here, particularly in view of the fact that A.H.R.A. did make a full closing argument.

Finally, A.H.R.A. contends that there should have been no award of attorney's fees. Although the Texas statute [1] provides for attorney's fees in certain enumerated instances, it has been held that there can be no award of attorney's fees in a suit on a service contract where the charges are not primarily for personal services performed by the contractor or his employees. In Radio KOKE v. Tiemann, Tex.Civ.App.1964, 378 S.W.2d 952, attorney's fees were denied in an action to recover the cost of moving household goods. The court acknowledged that some personal services were involved, but observed that the contribution of machinery and equipment employed in the moving was in great disproportion to the amount of labor and personal services involved. Since the charges here were primarily for media expenses, traveling and living expenses, A.H.R.A. contends that this is not a service contract and will not support an award of attorney's fees.

This argument fails to take into account the 1971 amendment to Article 2226, which deleted the requirement that the claim be for *personal* services rendered by the claimant himself. Instead, Article 2226 now provides for an award of attorney's fees in a suit by "[a]ny person, corporation, partnership, or other legal entity having a valid claim . . . for services rendered" or any of the several other enumerated types of claims. The amendment apparently changes the result of Tenneco Oil Co. v. Padre Drilling Co., Tex.1970, 453 S.W.2d 814, where the court held that a corporation could not have a claim for personal services, since it could not render services *personally* but could only do so through its employees. We think the Texas legislature, in amending the statute to delete the requirement that the services need be "personal," was adopting the broad meaning of "services" first spelled out by the Texas Supreme Court in Van Zandt v. Fort Worth Press, Tex. 1962, 359 S.W.2d 893, and reaffirmed in *Tenneco*. In *Van Zandt*, the court distinguished the two terms as follows:

Webster's Third New International Dictionary gives a general definition of "service" as "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." The same source defines "personal services" thusly: "economic service involving the either intellectual or manual personal labor of the server rather than a salable product of his skill (physicians, architects, and garbage collectors equally sell personal services)." In construing the

---

1. Vernon's Ann.Civ.Stat. art. 2226

Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, over charges on freight or express, lost or damaged freight or express, or stock killed or injured or suits founded upon a sworn account or accounts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such persons or corporation, he may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees. The amount prescribed in the current State Bar Minimum Fee Schedule shall be prima facie evidence of reasonable attorney's fees. The court, in non-jury cases, may take judicial knowledge of such schedule and of the contents of the case file in determining the amount of attorney's fees without the necessity of hearing further evidence.

state's Unemployment Compensation Act the Supreme Court of Utah had occasion in Creameries of America v. Industrial Commission, 98 Utah 571, 102 P.2d 300, 304, to differentiate "services" and "personal services". The court said:

"In ordinary usage the term 'services' has a rather broad and general meaning. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. The general definition of 'service' as given in Webster's New International Dictionary is 'performance of labor for the benefit of another'; 'Act or instance of helping, or benefiting'. The term 'personal service' indicates that the 'act' done for the benefit of another is done *personally* by a particular individual."

359 S.W.2d at 895.

■ There is no doubt that, in changing "personal services" to "services," the legislature was broadening the coverage of the statute. Thus, despite the oft-repeated assertion that the statute is penal and should be construed narrowly, Van Zandt v. Fort Worth Press, *supra*; W. G. Tufts and Son v. Herider Farms, Inc., Tex.Civ.App.1972, 485 S.W. 2d 300, we hold that it is broad enough to cover actions on contracts for the sort of advertising and promotional services provided here, even though many of those services were not provided by Clark personally but rather by the various advertising and broadcast media retained by him. These services were certainly actions that furthered the end or purpose of promoting the West Palm Beach race, benefitting A.H.R.A. They clearly fall within the broad and general definition of "services" as propounded by the Texas Supreme Court.

As an independent reason for denying attorney's fees here, A.H.R.A. cites Eisenbeck v. Buttgen, Tex.Civ.App.1970, 450 S.W.2d 696, where the court denied recovery of attorney's fees in a suit on a "special contract." It defined "special contract" as "one with peculiar provisions or stipulations not found in the ordinary contract relating to the same subject matter and such provisions are such as, if omitted from the ordinary contract, the law will never supply." Since the contract here contained "specialized personnel containing terms," such as the $50 per day promotional fee, A.H.R.A. contends it was a special contract, and that attorney's fees were not authorized by the statute.

There is considerable doubt about the scope of the special contracts doctrine. By defining a special contract as one with provisions that would not be implied if omitted, the doctrine appears to preclude recovery on any express contract. Indeed, our court has once held that attorney's fees are not recoverable under Article 2226 on a contract claim. Todd Shipyards Corp. v. Jasper Electric Services Co., 5 Cir. 1969, 414 F.2d 8. At the same time, however, the Texas courts have often allowed attorney's fees in contract actions. *E.g.*, Page v. Superior Stone Products, Inc., Tex.Civ.App. 1967, 412 S.W.2d 660; Shirey v. Albright, Tex.Civ.App.1966, 404 S.W.2d 152; Lander v. Boykin, Tex.Civ.App. 1961, 351 S.W.2d 594.

■ Any doubt that attorney's fees are available in contract actions which may have existed at the time of the *Todd Shipyards* decision was authoritatively dispelled by the Texas Supreme Court the next year in Tenneco Oil Co. v. Padre Drilling Co., Tex.1970, 453 S.W. 2d 814, when it stated that

We are not to be understood as holding that claims for personal services rendered and labor done cannot be founded upon contract. A contract for purely personal services or for labor only will support an award of an attorney's fee.

*Id.* at 820. This holding was reaffirmed in Tacker v. Phillips, Tex.1971, 473 S.W. 2d 1. There is no doubt that attorney's fees may be recovered in a proper contract action.

■ There still remains the question whether this contract was a "special contract." We hold that it is not within the meaning of that term as used

in any of the cases cited by A.H.R.A. In both Mauldin v. Sullivan, Tex.Civ. App.1972, 484 S.W.2d 157, and Langdeau v. Bouknight, 1961, 162 Tex. 42, 344 S.W.2d 435, plaintiff sued on a sworn account, but the courts decided that the claim was actually based on a special contract and denied attorney's fees. The term "special contract" was used in those cases merely to differentiate the contractual nature of the claim from a sworn account claim, since the courts were denying attorney's fees only because the plaintiffs had sued under the wrong theory. The term was not used as a means of differentiating one sort of contractual claim from another, as A.H.R.A. would have us apply it here. The Texas Supreme Court emphasized the limited meaning ascribed to the term in this context.

> The Court of Civil Appeals correctly held that under the heading "sworn account" a recovery of attorney's fees could not be had in a suit "resting upon special contracts". Recovery of attorney's fees under some of the other classifications set out in Art. · 2226 might be had under a contract between the parties covering such situation, but not under the part dealing with "sworn accounts." In Meaders v. Biskamp, supra, 159 Tex. 79, 316 S.W.2d 75, as in this case, the plaintiff relied for recovery of attorney's fees upon the "sworn account" provision. What we there said, "it [sworn account] does not mean transaction between parties resting upon special contract" was not a holding that recovery of attorney's fees under any other provision of Art. 2226 may not rest upon a contract basis. It was simply a holding that a recovery under the "sworn account" provision cannot be had upon a special contract.

*Id.* at 441.

In Eisenback v. Buttgen, Tex.Civ.App. 1970, 450 S.W.2d 696, the plaintiff was attempting to recover on a contract providing for payment of a percentage of gross earnings of a business, over and above the salary stipulated in the contract. The court denied attorney's fees under the special contracts doctrine, but only because it felt that the sort of recovery being sought was not covered by the provision of the statute in issue.

> It is quite obvious from a reading of appellee's petition that he did not sue to recover payment for services rendered within Art. 2226, V.A.C.S., but brought his action solely to recover for breach of a contract concerning payment of a percentage of gross earnings of a business. Appellee makes no contention concerning payment of adequate salary or wages for the services he performed. It is undisputed that such salary or wages have been fully paid.

*Id.* at 702. Thus, the court found it to be a "special contract" to the extent it provided for payments on a percentage of gross earnings of a business, an item not mentioned in Article 2226. By contrast, Clark's contract covers only payments for services, an item which is specifically covered by the statute. Thus, we hold that this was not a "special contract," and that the district court's award of attorney's fees was proper.

 Clark submits that its attorney's fees should be awarded for the taking of this appeal and for the collection of the judgment. In construing a different statutory provision for attorney's fees, the Texas Supreme Court has indicated that attorney's fees on appeal should be covered by such statutes.

> The statute provides for recovery of reasonable attorney fees which the insured must pay to his attorney because of the necessity of pursuing legal action to collect the loss covered by the policy. The purpose of the statute would be defeated if only the fees incurred in the trial court were recoverable and the fees incurred during the appeal remained the expense of the policyholder. No such distinction or limitation may be found in Article 3.62. When it imposes liability on the company for 'reasonable attorney fees for the prosecution and collection of such loss,' it includes all fees incurred for that purpose.

International Security Life Insurance Co. v. Spray, Tex.1971, 468 S.W.2d 347, 349. Article 2226 is similar to Article 3.62, V.A.T.S. Insurance Code in that it has no distinction or limitation indicating that only fees for trial work are covered. Attorney's fees for appellate work can be conditionally granted by Texas trial courts under Article 2226. Yellow Freight System, Inc. v. Hydraulic Products Co., Tex.Civ.App.1972, 482 S. W.2d 659. We hold that attorney's fees for participating in this appeal are authorized under Article 2226, and we remand to the district court for a determination of the proper amount, as we did in United States ex rel. Caldwell Foundry and Machine Co. v. Texas Construction Co., 5 Cir. 1955, 237 F.2d 705.

We find Clark's claim for attorney's fees expended in collecting the judgment to be premature. There will be time enough to face this issue once the judgment is final and an attempt to collect it is made. If any attorney's fees are in fact incurred in the attempt, the question whether Article 2226 covers them will then be ripe for adjudication.

The judgment of the district court is affirmed and the case is remanded for a determination of a proper award for attorney's fees for this appeal.